874 So.2d 1176 (2004)
Traci Ann GROSVENOR, Petitioner,
v.
STATE of Florida, Respondent.
No. SC02-1307.
Supreme Court of Florida.
March 25, 2004.
Rehearing Denied May 26, 2004.
*1177 Robert S. Griscti, Gainesville, FL, for Petitioner.
Charles J. Crist, Jr., Attorney General, and Kellie A. Nielan and Pamela J. Koller, Assistant Attorneys General, Daytona Beach, FL, for Respondent.
CANTERO, J.
We review Grosvenor v. State, 816 So.2d 822 (Fla. 5th DCA 2002), which certified conflict with Cousino v. State, 770 So.2d 1258 (Fla. 4th DCA 2000), and Mason v. State, 742 So.2d 370 (Fla. 1st DCA 1999). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. This case involves a defendant seeking to vacate a guilty plea because of ineffective assistance of counsel in failing to advise of a possible defense. We must decide whether, in asserting prejudice, defendants must allege that the defense would have succeeded at trial. For the reasons stated below, we hold they do not.

I.
Petitioner Traci Ann Grosvenor and a male companion went on a week-long alcohol and cocaine binge, driving from Sarasota to Tampa and ending in Bushnell in Sumter County. Because of tire problems, they stopped at an auto store closed for the night. A police officer saw them stealing a tire from a car parked in the lot and called the store's owner, who drove to the store with his son. The officer questioned the two travelers and locked Grosvenor's friend in the patrol car. Grosvenor left her car with a handgun and shot the officer. An exchange of gunfire occurred, in which the store owner's son was killed and *1178 the store owner wounded. Grosvenor also was hit. A laboratory report revealed traces of marijuana and cocaine in Grosvenor's system when she arrived at the hospital.
Grosvenor was indicted for capital firstdegree murder, attempted first-degree murder of a law-enforcement officer, attempted first-degree murder with a firearm, robbery with a firearm, and resisting arrest with violence. She was represented by two attorneys from the Fifth Judicial Circuit's Public Defender's Office. She told her attorneys that she had used drugs and alcohol on the day of the incident. A tape recording and transcript of a statement she gave to the police confirmed her statement. Her attorneys never discussed with her the possibility of a voluntary intoxication defense.
Grosvenor pleaded guilty to first-degree murder. Later, Grosvenor called a local newspaper and told a reporter that she did not kill anyone and if she had a "split hair chance" at a trial she wanted to take it. The trial judge, after reading the article, sua sponte vacated the guilty plea and attached a copy of the newspaper article to his order. Later, an investigator for the Public Defender's Office interviewed Grosvenor, as did a psychologist. She detailed her drug and alcohol abuse to both. Again, her attorneys did not advise her about a voluntary intoxication defense. Grosvenor later accepted her attorneys' advice to avoid a trial and the concomitant possibility of the death penalty. She entered a plea of nolo contendere and was sentenced to two life terms, two fifty-year terms, and one five-year term, all running concurrently.
After she was sentenced, Grosvenor filed a motion for postconviction relief seeking to vacate the judgments and sentences. The motion alleged that "had [she] been informed of her viable defense of voluntary intoxication ... she would not have entered the plea agreement and instead would have proceeded to trial." The trial court granted an evidentiary hearing on the issue of ineffective assistance of counsel.
Under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a defendant alleging ineffective assistance of counsel must prove both deficient performance of counsel and prejudice to the defendant. In this case, the court agreed to assume for purposes of the initial hearing that trial counsel's performance was deficient and consider only whether Grosvenor suffered prejudice. Grosvenor presented witnesses who testified about her frequent intoxication and her demeanor when intoxicated. Eyewitnesses, however, testified in their depositions that she did not appear intoxicated at the time of the crime. Grosvenor herself told police officers after the incident that she had not been too intoxicated to drive a vehicle, but only had been "a little high, tipsey [sic]."
The deposition of Grosvenor's lead trial attorney was also admitted into evidence at the hearing. He stated that he considered the voluntary intoxication defense and "decided it was not a valid defense." Moreover, he stated that Sumter County juries do not even consider drug and alcohol abuse as mitigationthey treat it as another aggravating factor.
The court found that Grosvenor's voluntary intoxication defense was not "viable" and therefore concluded that she had not demonstrated prejudice.
Grosvenor appealed. The Fifth District affirmed, holding that defendants challenging their guilty pleas based on ineffective assistance of counsel must show that they had a "viable" defense. Grosvenor, 816 So.2d at 822. The court recognized that *1179 its decision conflicted with decisions of other district courts and certified conflict with those decisions.

II.
In Hill v. Lockhart, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), the United States Supreme Court established a two-pronged test for determining claims of ineffective assistance of counsel relating to guilty pleas. The first prong is the same as the deficient performance prong of Strickland. See Hill, 474 U.S. at 58-59, 106 S.Ct. 366. Regarding the second prong, the Supreme Court in Hill held that a defendant must demonstrate "a reasonable probability that, but for counsel's errors, the defendant would not have pleaded guilty and would have insisted on going to trial." Id. at 59. The Court followed that statement, however, with an explanation that has caused much confusion:
In many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than going to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the "prejudice" inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial. See, e.g., Evans v. Meyer, 742 F.2d 371, 375 (C.A.7 1984) ("It is inconceivable to us ... that [the defendant] would have gone to trial on a defense of intoxication, or that if he had done so he either would have been acquitted or, if convicted, would nevertheless have been given a shorter sentence than he actually received"). As we explained in Strickland v. Washington, supra, these predictions of the outcome at a possible trial, where necessary, should be made objectively, without regard for the "idiosyncracies of the particular decisionmaker." Id., at 695, 104 S.Ct. 2052.
474 U.S. at 59-60, 106 S.Ct. 366.
Given this language, courts in both Florida and other jurisdictions have interpreted Hill `s explanation of the prejudice prong differently. In Florida, three of the five district courts of appeal have held that a defendant asserting ineffective assistance of counsel relating to a guilty plea is not required to allege a viable defense. Instead, the viability of the defense is relevant to the credibility of the assertion that the defendant would have insisted on going to trial if informed of that defense. See, e.g., Cordes v. State, 842 So.2d 874 (Fla. 2d DCA 2003); Hobbs v. State, 790 So.2d 1164, 1166 (Fla. 4th DCA 2001); Mason v. State, 742 So.2d 370 (Fla. 1st DCA 1999). Several other jurisdictions, including the overwhelming majority of federal circuit courts, also have adopted this approach.[1]
*1180 Two districts, however, have interpreted Hill as requiring a defendant to allege that, had the plea not been entered, the defendant would have prevailed at trial. See, e.g., Maples v. State, 804 So.2d 599 (Fla. 5th DCA 2002); Diaz v. State, 534 So.2d 817 (Fla. 3d DCA 1988). A few other jurisdictions also have held that Hill requires that defendants allege that their affirmative defenses would likely have succeeded at trial.[2] These courts rely on the paragraph from Hill quoted above, which explains that in many cases, "the resolution of the `prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." 474 U.S. at 59, 106 S.Ct. 366 (emphasis added).
In our judgment, however, these courts overlook two things. First, they ignore the conditional language in the Court's statement, which notes that such a resolution will occur in many, not all, cases and also notes that the prejudice inquiry will depend largely, but not totally, on the merits of the defense. That in many cases the prejudice inquiry will "largely" resemble a merits analysis, however, does not make them coextensive. Rather, it simply means that the merits of the defense is closely related to the credibility of the defendant's claim that he would not have pleaded guilty if advised of the defense. Second, these cases ignore the immediately preceding paragraph in Hill, in which the Court first states that the prejudice inquiry "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process" and then holds unequivocally that "in order to satisfy the `prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59, 106 S.Ct. 366 (emphases added). In our view, these statements leave no room for a contrary interpretation.
The First District Court of Appeal has offered a cogent analysis of Hill:
As the Court explained in Hill, the "prejudice" requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." 474 U.S. at 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (emphasis added). And the Court further elaborated that, in order to show prejudice, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. (emphasis added). Immediately following this language, the Court offered a footnote indicating that several federal appeals courts had previously "adopted this general approach" in their decisions. Id. Thomas v. Lockhart, 738 F.2d 304 (8th Cir.1984), and United States v. Gavilan, 761 F.2d 226 (5th Cir.1985), were cited as examples of such decisions. These federal appeals court decisions in turn *1181 make it clear that the relevant inquiry for purposes of a Strickland prejudice analysis in conjunction with a motion to withdraw a plea because of attorney incompetence is whether the outcome of the "plea proceedings" would have been different had competent assistance of counsel been provided. See Thomas v. Lockhart, 738 F.2d at 307; United States v. Gavilan, 761 F.2d at 228.
Brazeail v. State, 821 So.2d 364, 368 (Fla. 1st DCA 2002). We agree with this analysis and conclude that the proper interpretation of Hill is to follow its express language. The merits of any defense, as the Court explained in Hill, is relevant to the credibility of the defendant's assertion that he would have insisted on going to trial. If the defense was meritless, the defendant's claim carries much less weight. As one federal court has explained, "[i]t is not necessary for the defendant to show that he actually would have prevailed at trial, although the strength of the government's case against the defendant should be considered in evaluating whether the defendant really would have gone to trial if he had received adequate advice from his counsel." Miller v. Champion, 262 F.3d 1066, 1069 (10th Cir.2001).
Our conclusion is buttressed by the Supreme Court's recent reaffirmation of Hill in Roe v. Flores-Ortega, 528 U.S. 470, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000). In Flores-Ortega, counsel failed to notify the defendant of his right to appeal. In granting relief, the Supreme Court explained that the defendant need not demonstrate grounds for a meritorious appeal or even "specify the points he would raise were his right to appeal reinstated." Id. at 486, 120 S.Ct. 1029. Instead, all that is required is that the defendant show that but for counsel's error he would have appealed. The Court noted that although evidence of nonfrivolous grounds for appeal will give weight to the contention that the defendant would have appealed, such evidence is not required where there are other substantial reasons to believe he would have appealed. Id.
In Flores-Ortega, the Court expressly noted that its analysis "[broke] no new ground, for it mirrors the prejudice inquiry applied in [Hill]." Id. at 485, 120 S.Ct. 1029. The Court then compared the failure to advise of an appeal to the failure to advise of an available defense:
Like the decision whether to appeal, the decision whether to plead guilty (i.e., waive trial) rested with the defendant and, like this case, counsel's advice in Hill might have caused the defendant to forfeit a judicial proceeding to which he was otherwise entitled. We held that "to satisfy the `prejudice' requirement [of Strickland], the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, supra, at 59, 106 S.Ct. 366.
Id. at 485, 120 S.Ct. 1029 (emphasis added). Thus, if Hill needed any clarification, Flores-Ortega provided it.
In sum, we must follow the holding of Hill v. Lockhart. A defendant who has pleaded guilty who claims that defense counsel was ineffective for failing to advise of an available defense establishes Strickland's prejudice prong by demonstrating a reasonable probability that, but for counsel's errors, the defendant would not have pleaded guilty and would have insisted on going to trial. Counsel's effectiveness is determined according to the totality of the circumstances. Strickland, 466 U.S. at 690, 104 S.Ct. 2052. Therefore, in determining whether a reasonable probability exists that the defendant would have insisted on going to trial, a court should consider the totality of the circumstances *1182 surrounding the plea, including such factors as whether a particular defense was likely to succeed at trial, the colloquy between the defendant and the trial court at the time of the plea, and the difference between the sentence imposed under the plea and the maximum possible sentence the defendant faced at a trial. As the Supreme Court emphasized in Hill, these predictions "should be made objectively, without regard for the `idiosyncracies of the particular decisionmaker.'" 474 U.S. at 59-60, 106 S.Ct. 366 (quoting Strickland, 466 U.S. at 695, 104 S.Ct. 2052).

III.
We address one last issue concerning the procedure employed in this case to consider Grosvenor's ineffective assistance of counsel claim. Grosvenor requested that the circuit court consider the issue of prejudice first, and to assume for the moment that counsel's performance was deficient. The purported purpose of such bifurcation was the conservation of time and resources. As this case demonstrates, however, sometimes such a process fails to achieve the desired efficiency. In many ineffective assistance of counsel claimsand perhaps more often when the claim concerns a guilty pleathe deficient performance prong and the prejudice prong are related and can involve similar issues. See Roe v. Flores-Ortega, 528 U.S. at 485-86, 120 S.Ct. 1029 ("We recognize that the prejudice inquiry we have described is not wholly dissimilar from the inquiry used to determine whether counsel performed deficiently in the first place...."). Where a defendant claims ineffective assistance on the ground that counsel failed to advise of a viable defense, counsel's consideration of the defense is relevant to whether counsel performed deficiently and also informs the credibility of the assertion that the defendant would have gone to trial if told of the defense. Although Hill v. Lockhart itself is silent on the issue, several courts applying it have considered the viability of the defense under the deficient performance prong. See, e.g., Panuccio v. Kelly, 927 F.2d 106, 109-10 (2d Cir.1991) (where "there was a high likelihood" that the intoxication defense would have failed at trial and would have exposed the defendant to a longer sentence, "counsel served adequately during the plea negotiations because he had no duty to disclose the intoxication defense under these circumstances.") (emphasis added); Savino, 82 F.3d at 602 (relying on an assessment that the defendant could not have presented a "viable intoxication defense" in concluding that there was no showing of deficiency). We agree that the viability of a defense is relevant to determine whether counsel performed deficiently in failing to inform the defendant about that defense.
In this case, much of the evidence presented at the evidentiary hearing would have been relevant to counsel's alleged deficient performance as well as to prejudice. For example, Grosvenor's trial counsel testified that he considered the voluntary intoxication defense but that Sumter County juries do not view such a defense with favor. This testimony is relevant to whether Grosvenor's counsel performed deficiently in failing to inform her of the voluntary intoxication defense. Because the evidentiary hearing and the trial court's order specifically focused only on the prejudice prong, however, we cannot now consider this evidence to evaluate counsel's performance.
For all these reasons, we are not convinced that bifurcating the hearing in this case achieved any efficiency. Moreover, when a court considers only the prejudice prong and concludes that no prejudice ensued, a later reversalwhich may not happen until more than a year latermay *1183 require another evidentiary hearing on the deficient performance prong, thereby unnecessarily prolonging the process. We suggest that courts consider such problems when determining whether to bifurcate an ineffective assistance of counsel claim.

V.
For the reasons stated, we quash the Fifth District's decision in this case and remand to the circuit court for further proceedings consistent with this opinion. In determining Grosvenor's claim of ineffective assistance of counsel the trial court is free to consider both the deficient performance and the prejudice prongs of Strickland.
It is so ordered.
ANSTEAD, C.J., and PARIENTE, LEWIS, and QUINCE, JJ., concur.
BELL, J., concurring in part and dissenting in part with an opinion.
WELLS, J., dissenting with an opinion.
BELL, J., concurring in part, dissenting in part.
I concur with the majority opinion except for the decision to remand the case back to the circuit court for further proceedings.
When a defendant who has pleaded guilty seeks to raise a claim of ineffective assistance of counsel in connection with that guilty plea, he or she satisfies the prejudice prong of Hill v. Lockhart, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), by demonstrating "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59, 106 S.Ct. 366. The focus of the inquiry is not whether there is a reasonable probability that the defendant would have succeeded at trial (had he or she pleaded not guilty). Rather, as the United States Supreme Court stated in Hill, and as the majority opinion stresses, the prejudice prong "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Id. (emphasis added). That must be the postconviction court's ultimate focus.
I would emphasize, however, that the standard must be an objective one. As the United States Court of Appeals for the Fourth Circuit has noted, "[a]lthough [the prejudice prong of the Hill test] focuses the inquiry on a subjective question [that is, whether the defendant would not have pleaded guilty], the answer to that question must be reached through an objective analysis." Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir.1988). A subjective test, analyzed from the defendant's ex post perspective, would be difficult to administer and would upset the State's strong interest in preserving the finality of guilty pleas. The very purpose of requiring a defendant to prove not only that his or her counsel's performance was constitutionally deficient but also that he or she was prejudiced by the deficient performance is to "serve the fundamental interest in the finality of guilty pleas." Hill, 474 U.S. at 58, 106 S.Ct. 366. In Hill, the United States Supreme Court stressed this interest and quoted from its previous decision in United States v. Timmreck, 441 U.S. 780, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979):
Every inroad on the concept of finality undermines confidence in the integrity of our procedures; and, by increasing the volume of judicial work, inevitably delays and impairs the orderly administration of justice. The impact is greatest when new grounds for setting aside guilty pleas are approved because the vast majority of criminal convictions result *1184 from such pleas. Moreover, the concern that unfair procedures may have resulted in the conviction of an innocent defendant is only rarely raised by a petition to set aside a guilty plea.
Id. at 784, 99 S.Ct. 2085 (quoting United States v. Smith, 440 F.2d 521, 528-29 (7th Cir.1971) (Stevens, J., dissenting)).
A prejudice prong that focuses merely on the "credibility of the defendant's assertion" that he or she would not have pleaded guilty, see majority opinion at 9, would not adequately safeguard this critically important interest. In Miller v. Champion, 262 F.3d 1066 (10th Cir.2001), the United States Court of Appeals for the Tenth Circuit held that the defendant's assertion that he would not have pleaded guilty, standing alone, is "insufficient to entitle him to relief. Rather, we look to the factual circumstances surrounding the plea to determine whether [he] would have proceeded to trial." Id. at 1072 (citation omitted).[3] This is precisely the reason that the postconviction court, when deciding whether the defendant has demonstrated that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty, must look "to the totality of the circumstances." Majority op. at 1181. As the majority opinion holds,
in determining whether a reasonable probability exists that the defendant would have insisted on going to trial, a court should consider the totality of the circumstances surrounding the plea, including such factors as whether a particular defense was likely to succeed at trial, the colloquy between the defendant and the trial court at the time of the plea, and the difference between the sentence imposed under the plea and the maximum possible sentence the defendant faced at a trial.
Id.
Furthermore, when the postconviction court examines the circumstances that the defendant was facing, or would have been facing had counsel's performance been adequate, the court must make its ultimate determination from an objective standpoint. In Roe v. Flores-Ortega, 528 U.S. 470, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000), when discussing Hill, the United States Supreme Court stated that "when, in connection with a guilty plea, counsel gives deficient advice regarding a potentially valid affirmative defense, the prejudice inquiry depends largely on whether that affirmative defense might have succeeded, leading a rational defendant to insist on going to trial." 528 U.S. at 486, 120 S.Ct. 1029 (emphasis added).
With that understanding, I agree with the majority that the district court decisions which have held that a defendant must demonstrate that he or she would not have pleaded guilty and would have succeeded *1185 at trial should be quashed. However, I do not agree that this case should be remanded to the trial court. While the district court may have applied the wrong standard in affirming the trial court, I believe the trial court applied the correct law in rejecting Grosvenor's claim.[4]
Grosvenor claims that her counsel was deficient in not informing her of the possibility of raising the defense of voluntary intoxication. When addressing the prejudice prong, the trial court had to determine whether there was a reasonable probability that, had she been so informed, she would not have pleaded guilty. As I have noted above, Grosvenor's bare allegation or assertion on this point is not sufficient to carry her burden of proof. She had to demonstrate that based on the totality of the circumstances that existed at the time she entered her plea, there is a reasonable probability that, had she been informed of the possibility of raising the voluntary intoxication defense, she would not have pleaded guilty and would have instead decided to go to trial.
The trial court articulated the standard as follows:
The standard for determining if there was prejudice is whether there is a reasonable probability that, but for counsel's deficiencies, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In this case, that means that, but for counsel's deficiencies, the case would have gone to trial and the Defendant would have been found Not Guilty or been found guilty of a lesser offense that could have resulted in a sentence less than she received.
It is true that this is not the same standard the majority opinion articulates and which I agree is the correct interpretation of Hill, broadly speaking. But as applied to the facts of this case and to Grosvenor's particular claim, I do not believe that the trial court applied the law incorrectly.
"Attorney errors come in an infinite variety ...." Strickland v. Washington, 466 U.S. 668, 693, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). We must recognize that a defendant's decision to plead guilty or not guilty will be affected differently by different types of errors. This is implicit in the United States Supreme Court's opinion in Hill. After articulating the prejudice prong in its most general termsthat a defendant must demonstrate that but for counsel's errors he or she would not have pleaded guiltythe Court goes on to differentiate between different types of *1186 claims. Some claims will allege that counsel failed to investigate or discover potentially exculpatory evidence; other claims will be like the claim here where "the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged." Hill, 474 U.S. at 59, 106 S.Ct. 366. The claim at issue in Hill was that counsel gave "erroneous advice as to eligibility for parole under the sentence agreed to in the plea bargain." Id. at 60, 106 S.Ct. 366.
This, I believe, is the importance of the Court's statement that
[i]n many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the "prejudice" inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial.
Hill, 474 U.S. at 59, 106 S.Ct. 366. The Court recognized the specific effect such errors will usually have on a defendant's decision to plead guilty or not guilty.
Grosvenor's claim was that she was not informed of a particular defense. We must assume, therefore, that at the time she entered her plea, the only thing she did not know about the "totality of the circumstances" that she faced was the "possibility" of raising the defense of voluntary intoxication. The facts found by the trial courtparticularly, that the facts of Grosvenor's case did not support the defenselead inescapably to the legal conclusion that she has failed to demonstrate that had her lawyer told her about the defense and about her chances of succeeding with the defense, there is a reasonable probability that she would not have pleaded guilty. Her claim is that if she had any chance for success at trial, whether it be an acquittal or merely a conviction on a lesser charge, she would have taken that chance and proceeded to trial. Therefore, she claims, had she known that voluntary intoxication could be used as a defense to first-degree murder, she would not have pleaded guilty. But as the trial court found, the facts of her case did not support such a defense. Judging her claim objectively and from that point in time when she decided to plead guilty, it cannot be said that there is a reasonable probability that had she known about a defense that she would not have been able to use, she would have gone to trial in reliance on that unavailable defense.
Such a conclusion becomes all the more apparent when one examines the rest of the circumstances that Grosvenor faced at the time she entered her plea, particularly the severity of the sentence that she faced if convicted (the death penalty), the strength of the State's case, and the relative favorability of the plea deal offered by the State. In a very similar case, the United States Court of Appeals for the Seventh Circuit, in a decision cited favorably by the United States Supreme Court in Hill, held that the defendant had failed to "satisfy the requirement of `affirmatively *1187 prov[ing] prejudice.'" Evans v. Meyer, 742 F.2d 371, 375 (7th Cir.1984). After detailing the facts which made it "inconceivable that a jury would have acquitted Evans because he was too intoxicated to form the [specific] intent required to commit these crimes," the Court stated that it "is inconceivable to us, and not merely improbable ... that Evans would have gone to trial on a defense of intoxication, or that if he had done so he either would have been acquitted or, if convicted, would nevertheless have been given a shorter sentence than he actually received." Evans, 742 F.2d at 374-75. I believe that here "[i]t is sufficiently clear that [Grosvenor] had no hope at all of an acquittal to enable us to infer that [she] would not have changed [her] plea to not guilty." Id. at 375 (quoting Morgan v. Israel, 735 F.2d 1033, 1036 (7th Cir.1984)).[5]
I therefore concur with the majority's analysis of Hill v. Lockhart, but I dissent from the decision to remand the case to the trial court for further proceedings.
WELLS, J., dissenting.
I dissent from disapproving the Fifth District's holding that to maintain a claim of ineffective assistance of counsel in connection with a plea of guilty or nolo contendere, a defendant must allege and demonstrate that he or she had a viable defense. I conclude that this requirement is consistent with Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), and Roe v. Flores-Ortega, 528 U.S. 470, 486, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000).
I conclude that for present purposes the key statement from Hill is:
Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the "prejudice" inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial.
I recognize that the majority does not eliminate consideration of the viability of the defense but, rather, subsumes the consideration within the consideration of "the credibility of the defendant's assertion that she would have insisted on going to trial if informed of that defense." Majority op. at 1179. I conclude that the Supreme Court's later decision in Roe is helpful to a correct understanding here but not for the reason set out by the majority. I conclude Roe is helpful in further instructing on the interrelationship of the deficiency and prejudice prongs of Strickland in respect to postconviction ineffective assistance of counsel claims concerning guilty pleas, while making clear that both prongs are to be considered.
The majority draws too fine and subtle a distinction in disapproving the district court decisions which "have interpreted Hill as requiring a defendant to allege that, had the plea not been entered, the defendant would have prevailed at trial," see, e.g., Maples v. State, 804 So.2d 599 (Fla. 5th DCA 2002); Diaz v. State, 534 So.2d 817 (Fla. 3d DCA 1988), majority op. *1188 at 1180, and then holding that "the viability of a defense is relevant to determine whether counsel performed deficiently in failing to inform the defendant about that defense." Majority op. at 1182. I do not believe that the statement from Hill that "the `prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded," Hill, 474 U.S. at 59, 106 S.Ct. 366, either intends or requires such a distinction. I am concerned that the majority's decision will be read to require many evidentiary hearings which will only demonstrate that the defendant had no viable defense to assert.
I believe that the majority reaches the same conclusion as I do, which is that in order to be entitled to relief for ineffective assistance of counsel in respect to a plea of guilty, there has to be a finding by the postconviction court that the defendant had a defense which likely would have succeeded at a trial and which the guilty plea foreclosed presenting. If there has to be such a finding by the trial court, then I do not understand why that must not be pled in good faith by the defendant, since the defendant has the burden of proof on postconviction. Nor do I understand why this allegation is not required to set forth a basis for this "prejudice prong" of ineffective assistance of counsel.
The correct inquiry, when clearly boiled down, is whether there was a viable defense and not the credibility of the defendant in stating that the defendant would not have pled guilty. Whether the determination is within the deficiency prong or the prejudice prong, the determination is whether the defense had a sufficient chance of success such that the defendant would have probably gone to trial rather than pleading guilty.
Moreover, it does not make sense to me for the focus of this postconviction decision to be placed upon the credibility of the after-sentence statement of the defendant that he would not have entered the plea. This focus plainly ignores that when the defendant is serving the sentence, the benefits of the plea have faded into the reality of the present punishment.
Judge Kahn wrote an important concurring opinion in one of the conflict cases here for review. In Mason v. State, 742 So.2d 370 (Fla. 1st DCA 1999), Judge Kahn states:
I write separately because I believe that the holdings of the two cases with which the present majority notes conflict are worthy of serious consideration by our Supreme Court. Both Diaz v. State, 534 So.2d 817 (Fla. 3d DCA 1988), and Siegel v. State, 586 So.2d 1341 (Fla. 5th DCA 1991), rely upon this court's opinion in Frazier v. State, 447 So.2d 959 (Fla. 1st DCA 1984), for the proposition that a defendant seeking to set aside a no contest or guilty plea must show the existence of a viable defense. The trial and appellate courts of this state are literally barraged with post-conviction motions after guilty or no contest pleas. Most of these cases do not involve the unusual facts of the present claim. I see no reason why a post-conviction petitioner, should not normally have to allege, as support for the claim of prejudice in fact, that the petitioner either had a procedural defense to the charge or a factual defense that would have been viable had the case proceeded to trial, instead of concluding with a plea.
Id. at 372 (Kahn, J., concurring). I believe that there is great merit to what Judge Kahn wrote, and I would adopt Judge Kahn's opinion.
Additionally, the Supreme Court of Connecticut has adopted an analysis which I believe is correct. In Copas v. Commissioner of Correction, 234 Conn. 139, 662 *1189 A.2d 718, 729-30 n. 18 (1995), the court set out the following analysis:
The likelihood of a successful outcome at trial has been interpreted to include either the likelihood of acquittal or the likelihood of a more favorable sentence. In [Hill], 474 U.S. at 59, 106 S.Ct. 366, after the court explained that "the resolution of the `prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial," the court cited to Evans v. Meyer, 742 F.2d 371, 375 (7th Cir.1984), as an example. In [Evans] at 375, a case involving an allegation of ineffective assistance of counsel during the plea process, the court found it inconceivable that the defendant's potential defense of intoxication would have resulted in an acquittal or, if the defendant had been convicted as charged, that he would have been given a shorter sentence than he actually received. This implies that, under the Hill prejudice requirement, the petitioner must show that the decision to plead not guilty would have been based on the likelihood that either: (1) the defense would result in an acquittal of the charged offense; or (2) the defense would result in a lesser sentence than what the petitioner ultimately received. This dual outcome analysis has been applied by other courts, after Hill, to evaluate whether the prejudice standard has been satisfied in a particular case. See, e.g., Creech v. Arave, 928 F.2d 1481, 1487 (9th Cir.1991), rev'd in part on other grounds, 507 U.S. 463, 113 S.Ct. 1534, 123 L.Ed.2d 188 (1993), quoting [Evans] at 375; Ames v. New York State Division of Parole, 772 F.2d 13, 16 (2d Cir.1985), cert. denied. 475 U.S. 1066, 106 S.Ct. 1379, 89 L.Ed.2d 605 (1986) (evaluating lesser included charges of which defendant could have been convicted if he had gone to trial and comparing sentence he received through plea bargaining to potential sentence he would have received if he had gone to trial to determine whether prejudice standard was satisfied); Lyman v. Hopkins, 875 F.Supp. 631, 642 (D.Neb. 1995) (in evaluating prejudice court must analyze: (1) whether reasonable person would have gone to trial; (2) whether it is conceivable that defendant would have been acquitted at trial; and (3) "even if not acquitted, is it conceivable that the defendant would have been given a shorter sentence than he actually received"); Isaraphanich v. United States, 632 F.Supp. 1531, 1534 (S.D.N.Y.1986) (finding no prejudice after reviewing both potential for acquittal and lesser sentence if defendant had not pleaded guilty and had gone to trial). Therefore, we interpret Hill to require the petitioner in this case to show that the defense that was not discovered or explained to him during the plea process would have likely resulted in either an acquittal, or a more favorable sentence following a conviction of the charged offense or of a lesser included offense.
I conclude that this is the correct analysis.
I would not approve either Cousino v. State, 770 So.2d 1258 (Fla. 4th DCA 2000), or Mason v. State, 742 So.2d 370 (Fla. 1st DCA 1999). Cousino has no analysis of this issue but merely adopts the view of the First District. The lineage of the First District's decision on this issue is traced to Price v. State, 487 So.2d 34 (Fla. 1st DCA 1986). Price, in turn, held only that the motion in that case was sufficient to warrant an evidentiary hearing.
None of the cases from the First District give effect to the plain statement in Hill that the "`prejudice' inquiry will depend largely on whether the affirmative defense would have succeeded at trial." Hill, 474 U.S. at 59, 106 S.Ct. 366. I also believe that it is noteworthy that the other *1190 district courts have followed Diaz, 534 So.2d at 817, which requires a showing that the defendant had a viable defense. To change this rule after fifteen years will be a dramatic change in postconviction proceedings.
When the plain statement from Hill is given its effect, I have to conclude that for a defendant who pleads guilty or nolo contendere to sufficiently allege and prove a claim for relief based upon ineffective assistance of counsel in connection with the plea, the defendant must allege and then prove that there existed a viable defense. I would approve the decision of the Fifth District affirming the decision of the trial court that Grosvenor was not entitled to relief because she had failed to set forth a viable defense.
NOTES
[1] See, e.g., United States v. Todd, 287 F.3d 1160, 1163-64 (D.C.Cir.2002); Daniel v. Cockrell, 283 F.3d 697, 707-08 (5th Cir.2002); Miller v. Champion, 262 F.3d 1066, 1068-69 (10th Cir.2001); Weeks v. Snyder, 219 F.3d 245, 157 (3d Cir.2000); Witherspoon v. Purkett, 210 F.3d 901, 903 (8th Cir.2000); Warner v. United States, 975 F.2d 1207, 1214 (6th Cir.1992); Panuccio v. Kelly, 927 F.2d 106, 108 (2d Cir. 1991); Holmes v. United States, 876 F.2d 1545, 1551-52 (11th Cir.1989); Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988); Key v. United States, 806 F.2d 133, 138 (7th Cir. 1986); Iaea v. Sunn, 800 F.2d 861, 865-66 (9th Cir.1986); United States v. Giardino, 797 F.2d 30, 31 (1st Cir.1986); People v. Robles, 74 P.3d 437 (Col.Ct.App.2003), cert. denied, No. 03SC241 (Colo. Aug.18, 2003); People v. Rissley, 206 Ill.2d 403, 276 Ill.Dec. 821, 795 N.E.2d 174, 204 (2003); State v. Muriithi, 273 Kan. 952, 46 P.3d 1145, 1148-49 (2002).
[2] See Savino v. Murray, 82 F.3d 593, 599 (4th Cir. 1996) (apparently conflicting with Hooper v. Garraghty); Copas v. Comm'r of Corr., 234 Conn. 139, 662 A.2d 718, 726 n. 10 (1995); State v. Van Cleave, 674 N.E.2d 1293, 1302 (Ind.1996); Mowdy v. State, 638 So.2d 738, 742 (Miss. 1994).
[3] See also United States v. Horne, 987 F.2d 833, 835-36 (D.C.Cir.1993) ("Admittedly, the prejudice part of the Hill-Strickland test may pose a difficulty in some cases because it is by no means obvious how a court is to determine the probability that a defendant would have gone to trial. It is clear enough that a defendant must make more than a bare allegation that he `would have pleaded differently and gone to trial,' but it is not clear how much more is required of him."); Hooper, 845 F.2d at 475 ("[W]e do not put great weight in Hooper's representation that ... he would have chosen to go to trial. Although it carries some probative value, such a statement suffers from obvious credibility problems and must be evaluated in light of the circumstances the defendant would have faced at the time of his decision."); Patterson v. LeMaster, 130 N.M. 179, 21 P.3d 1032, 1039 (2001) ("Because courts are reluctant to rely solely on the self-serving statements of defendants, which are often made after they have been convicted and sentenced, a defendant is generally required to adduce additional evidence to prove that there is a reasonable probability that he or she would have gone to trial.").
[4] Additionally, the trial court's factual findings would also support the de novo legal conclusion by this Court that Grosvenor failed to demonstrate that her counsel's performance was deficient. Although the circuit court did not address the deficient performance prong, the court's findings of factparticularly its finding that the voluntary intoxication defense was not viableallow us to affirm the court's denial of the claim. Both the deficiency and the prejudice prongs are mixed questions of law and fact. See Stephens v. State, 748 So.2d 1028, 1033 (Fla. 1999). Accordingly, when we review a circuit court's order, we defer to the circuit court's factual findings and review the legal conclusionsthat is, whether counsel's performance was constitutionally deficient or prejudicialde novo. See Carroll v. State, 815 So.2d 601, 610 (Fla.2002).

I do not see how counsel's failure to advise a defendant of a nonviable defense could ever constitute deficient performance. In fact, a better argument could be made that distorting a defendant's sense of the strengths and weaknesses of his or her position by falsely raising his or her hopes of success could itself constitute deficient performance. Because the circuit court found that Grosvenor could not have presented a viable defense of voluntary intoxication, we could affirm the circuit court's denial of her claim on the ground that she failed to demonstrate that her counsel's performance was deficient.
[5] See also Hooper, 845 F.2d at 475-76 ("Even if Hooper had had a psychiatric report similar to the one produced in 1986, his only rational conclusion would have been that he faced serious obstacles in attempting to pursue an insanity defense. By accepting the plea agreement, Hooper was able to have the principal charge against him reduced to second degree murder.... Examining the 1986 psychiatric report against the background of the circumstances Hooper faced at the time he decided to plead guilty, we are not persuaded that it is sufficient evidence to establish a reasonable probability that had Hooper's lawyers obtained a sanity evaluation in 1979, Hooper would have declined the plea bargain in favor of a jury trial.").